PETITION OF ALEX LAFOUNTAINE
No. 11873.
Decided May 6, 1970.
468 P.2d 871.

Alex LaFountaine, pro se.

MEMO OPINION

PER CURIAM:

Petitioner is an inmate of the Montana State Prison confined there under a 15 year sentence for first degree burglary. He appears herein pro se by handwritten petition for a writ of habeas corpus seeking release from custody based on alleged violation of his constitutional rights resulting in his guilty plea and subsequent sentence.

It appears that petitioner was arrested on or about November 10,1967 by the deputy sheriff in Ronan on charges of using an automobile without the owner's consent. Petitioner had been drinking. He was brought to the Lake county jail in Polson and searched. The search unearthed $78.80 in currency and change stuffed in his socks. He was not advised of his constitutional rights at that time nor questioned.

The following morning petitioner became a strong suspect in a burglary of the canteen at the Kicking Horse Job Corps camp. The Lake county sheriff took petitioner out of his cell to interrogate him about this burglary and secured petitioner's oral "confession" prior to advising petitioner of his constitutional rights. Thereafter petitioner was advised of his constitutional rights and charged with burglary.

Petitioner was taken before the justice of the peace, waived his right to counsel and to a preliminary hearing, and was bound over to district court. Bail was fixed in the sum of $1500 which petitioner did not post.

On November 15, 1967 an Information was filed in the district court of Lake county charging petitioner with the crime of burglary in the first degree involving the canteen located at the Kicking Horse Job Corps camp. Petitioner appeared without counsel, waived counsel, entered a guilty plea, waived additional time for sentencing, and was thereupon sentenced to 15 years imprisonment in the state prison, the maximum prison sentence on that charge. Petitioner was not charged with any prior conviction of a felony, but an FBI "rap sheet" showing 5 prior convictions was shown to the court and petitioner was subjected to questioning under oath concerning them, all prior to sentencing.

On February 14, 1968 petitioner applied to the Sentence Review Division of this Court for review of his sentence. On March 27, 1968 the Sentence Review Division denied his relief, stating as a reason therefor "that the long prior record of this

prisoner of repeated offenses is such that in the opinion of the board no deduction of sentence would be justified.''

Thereafter on June 26, 1969, petitioner filed a handwritten petition for writ of habeas corpus with the district court of Lake county. This petition is substantially similar, although not identical, to the petition now before us in the instant case. The district court appointed the public defender to represent petitioner, issued the writ and set an evidentiary hearing on the petition, and the matter was heard in said court before the Hon. Jack L. Green, district judge, sitting without a jury. Following the hearing, Judge Green entered judgment ''that the Petition is without merit'' and ordered petitioner returned to the state prison.

Transcripts of the proceedings on arraignment, plea, and sentencing of petitioner in the district court on November 15, 1967 and of the hearing on the petition for habeas corpus on July 16, 1969 were prepared and filed for petitioner's use in his instant application to this Court. The complete district court files in both proceedings are also before us.

Petitioner's instant application for a writ of habeas corpus alleges that his constitutional rights were violated in the following particulars: (1) He was arrested on a charge of using an automobile without the consent of the owner, taken to jail, searched, subjected to a one-man identification lineup, and only later charged and held for burglary in question, all without counsel or advice concerning his constitutional rights. (2) Information concerning the burglary in question was secured from him while he was intoxicated, in custody, without counsel, and in ignorance of his constitutional rights, which information was later used by the prosecution to coerce a guilty plea from him. (3) He was coerced and importuned by the authorities into pleading guilty to the burglary in question without benefit of counsel by these threats and promises (e) to charge him with prior felony convictions (b) to use the illegally obtained information and identification (c) if he plead guilty and waived

counsel, he would receive the minimum sentence for burglary, he would not have to take the witness stand, and his prior convictions would not be brought to the attention of the court. (4) His prior convictions were "inferm" in that in 4 out of 5 of them he was not represented by counsel while the 5th involved procedural irregularities; thus in fact he stood before the Court in the instant case without any prior convictions but was not aware of this at that time.

Petitioner's application prays for the issuance of a writ of habeas corpus, a full evidentiary hearing thereon, and subsequent release from his alleged illegal confinement in the state prison.

At the outset we note that petitioner acknowledges that his instant application contains the same allegations as were heretofore presented to the district court by his petition of June 1969. The instant petition for writ of habeas corpus alleges, among other thangs:

"Petitioner did then file back into the trial court, the Fourth Judicial District, in the County of Lake, on or about 24, June, 1969 for a Writ of Habeas Corpus, *alleging the same allegations herein contained,* State cause No. 7486." (Emphasis added)

Petitioner was given a full evidentiary hearing by the district court on his petition at that time. Thus we must look to the transcript of the evidence adduced at that hearing, including the transcript of proceedings upon arraignment, plea, and sentencing introduced in evidence therein, to determine the merits of petitioner's instant application.

The main thrust of petitioner's testimony at that hearing is illustrated by the following testimony of petitioner upon cross-examination by the county attorney:

"Q. Do you remember entering a plea of guilty to the charge. A. Yes. Well, the point of the whole thing and what I am getting at in my Petition, is that if I pled guilty, I was promised I would get a break, and that is why I did it. I would

have been awful stupid to plead guilty if I didn't have that impression in my mind."

and again:

"Q. Mr. LaFountaine, to review your Complaint then, the main basis of your Complaint is that some statements were made that caused you to believe that you would get a break? A. Yes.

"Q. And you're not, at this time, as I understand it, attempting to say that anyone defined what that break would be? A. No, but then in Court like this, everybody knows what that means.

"A. What does it mean? A. Well, a break, you plead guilty (or copping out as they say) normally; a break everybody knows you get a lesser sentence than what it calls for."

and once again in redirect examination by the public defender:

"Q. (By Mr Hamman) Your main objection here and main reason for filing this Petition, is because you feel that you were sort of tricked into answering this plea as guilty? A. Yes."

We note that petitioner's own testimony absolves the county attorney from any inducements or representations other than stating to him before going into the courtroom for arraignment that "he said he was doing me a favor by not filing prior on me." Petitioner claims, however, that "The Under Sheriff or Sheriff said that if I cooperated they would give me a break, so I pled guilty." Nothing more specific than this is claimed by petitioner. At the conclusion of petitioner's testimony, Judge Green denied the State's motion to dismiss the petition.

Thereafter the sheriff, undersheriff, and county attorney were sworn and categorically denied making any promises of leniency, "deals", or inducements of any kind to petitioner. The record is undisputed that petitioner did in fact inform both the justice of the peace and the district judge in open court that he waived his right to counsel, the sole inquiry being what caused or induced such waiver. The record is devoid of any evidence of in-

ducement by coercion or threats, as petitioner claimed then and now claims, the sole evidence consisting of petitioner's testimony of promises of leniency as an inducement to plead guilty.

In this posture, the question posed is simply whose testimony is the more credible, petitioner's or the law enforcement officers'? The district judge gave more weight to the testimony of the sheriff, undersheriff and county attorney. We do likewise. Assuming without deciding that petitioner's testimony discloses an unlawful inducement to plead guilty in violation of petitioner's constitutional rights, is his testimony believable? We think not. By petitioner's own admission he has been before the courts on five previous occasions each culminating in the entry of a plea of guilty which demonstrates at least a passing acquaintance with the right to counsel, entry of plea, and sentencing despite his protestations to the contrary. Petitioner is a self-confessed alcoholic unable to remember many of the events and occurrences between the time of his arrest and his sentencing. Petitioner's sworn testimony in many particulars does not square with the verbatim written record of proceedings at his arraignment, plea, and sentencing.

Added to these inherent infirmities in petitioner's own testimony of 3 law enforcement officers that no inducements of any kind were made to petitioner. This creates a direct conflict in the evidence. This conflict was resolved by the district judge against petitioner We concur.

We pass on to petitioner's claim contained in his instant petition that he was questioned and incriminating information secured without his being advised of his constitutional right to remain silent or to the assistance of counsel, and that the information so secured was used to coerce a guilty plea from him. This same contention was made in his previous petition to the district court. He was granted a full evidentiary hearing on it. The evidence adduced, in the light most favorable to petitioner, creates nothing but a conflict in the evidence.

Petitioner contends that all this occurred. The sheriff's testi-

mony indicates that it did not. According to the sheriff on the morning following petitioner's arrest and incarceration in the Lake county jail, they received a call from the Job Corps that their canteen had been broken into. The sheriff's testimony follows:

"Q. Do you recall after his arrest, after being booked, do recall discussing this case with Alex LaFountaine? A. We, sometime after that * * * may I make this statement? After around eight-fifteen in the morning we received a call from the Job Corps people there, that the canteen had been broken into. The automobile that Mr. LaFountaine had allegedly used was found near the Job Corps Camp; it was elementary to believe he was a strong suspect in the burglary.

"Q. Do you remember talking to Mr. LaFountaine about this case? A. Yes

"Q. Do you remember advising him of his rights prior to talking to him? A. No, sir, for this reason; that was the fastest confession that I have ever listened to.

"Q. Would you state in what way you mean that? A. I took him out of the cell and wanted to talk to him, and he knew what I wanted to talk to him about; and I said there is only one thing missing and that is the rest of the money, and he said, 'It's under the floor mats of the Ronan Police Car'.

"Q. And at that time did you advise him of his rights? Then did you subsequently charge him with burglary? A. Yes."

Here again the district judge was entitled to believe the sheriff's testimony over that of petitioner. So are we and we believe it to be more credible, reliable and trustworthy. In this connection we note that the entire thrust of petitioner's testimony at the hearing was not that he was coerced into pleading guilty by this information secured by the sheriff, but that he was promised leniency if he would plead guilty.

The other claims contained in his previous petition and repeated in this petition are simply not supported by any substan-

tial credible evidence. Thus they do not merit individual discussion herein.

In summary, the merits of the instant petition turn on the facts as established by the evidence rather than upon the law relating to the constitutional rights of persons accused of crime. Finding the facts to be sufficient to support the claims contained in the petition for writ of habeas corpus, it is denied and this proceeding dismissed.